William R. LUSE, Plaintiff,

v.

William J. HENDERSON, Postmaster General of the United States Postal Service, Defendant.

No. Civ.A. 98–2124–KHV.

United States District Court, D. Kansas.

Aug. 18, 1999.

John Mueller, III, Christopher M. Crowley, McDowell, Rice, Smith & Gaar, Kansas City, MO, for plaintiff.

Christina L. Medeiros, Office of U.S. Attorney, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff filed suit against his current employer, the United States Postal Service, seeking damages for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and discrimination under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. On June 7, 8 and 9, 1999, plaintiff's retaliation claim was tried to a jury and plaintiff's ADEA claim was tried to the Court. The jury found in favor of defendant on the retaliation claim. This matter is before the Court on *Plaintiff William R. Luse's Renewed Motion For Judgment As A Matter Of Law Pursuant To Fed.R.Civ.P. 50(b)* (Doc. #62) filed June 21, 1999 on his retaliation claim, and the Court's findings of fact and conclusions of law on plaintiff's ADEA claim. For the reasons set forth below, the Court overrules plaintiff's renewed motion for judgment as a matter of law on the retaliation claim and finds in favor of defendant on plaintiff's ADEA claim.

### Factual Background

Plaintiff, a white male, was born November 10, 1946. *See* Stip. No. 2. In January 1972, plaintiff started work with the United States Postal Service ("USPS") as a custodian. *See* Stip. No. 3.

On December 6, 1989, plaintiff filed a formal EEOC complaint alleging race, sex and age discrimination. *See* Stip. No. 4. On November 29, 1990, plaintiff and defendant entered into a written settlement

agreement to resolve the complaint. *See* Stip. No. 5. Donald Lowe, Director of Plant Maintenance, and Harold B. Altman, Labor Relations Representative, signed the agreement on behalf of defendant. *See* Stip. No. 6. Plaintiff did not name Lowe as a discriminating official in the complaint. *See* Joint Exh. C.

In 1989, Lowe was the Director of Plant Maintenance for the General Mail Facility (GMF) and the Bulk Mail Center (BMC). *See* Stip. No. 7. In 1993, the USPS separated the GMF and BMC into two facilities. *See* Stip. No. 8. Lowe became Maintenance Manager of the BMC and he no longer had responsibility for operation of the GMF. *See* Stip. No. 9. Plaintiff remained at the GMF after the split. *See* Stip. No. 10. Don West was Maintenance Manager at the GMF, and he supervised plaintiff from 1993 until West retired in 1998. *See* Stip. No. 11.

The settlement agreement allowed plaintiff to make special application for the Promotion Eligibility Register (PER) and also provided that defendant and its employees would not retaliate against plaintiff in any way. *See* Stip. No. 13. Lowe testified, however, that he never read plaintiff's EEOC complaint, that defendant did not inform him of its contents, and that defendant did not counsel him after he executed the settlement agreement. *See* Stip. No. 12. After the settlement, plaintiff asked Lowe for advice on multiple occasions, some of which related to his efforts to seek advancement as a USPS employee. *See* Stip. No. 14.

The USPS has a formal selection system for promotion of employees in the maintenance craft. The selection system is called the Maintenance Selection System (MSS). To be promoted, employees must be qualified under the MSS and listed on a PER created for that particular position at the USPS facility where the employee works. The USPS will list an employee on a PER only after the employee has completed a written evaluation and completed an interview process with a review panel. If an employee is listed on a PER for a particu-

lar position, the USPS considers the employee qualified for that position under the USPS labor contract and USPS regulations. *See* Stip No. 1.

USPS employees may apply for positions through the Human Resources Department. The Human Resources Coordinator furnishes certain forms for the employee to complete and, in addition, a Supervisor Evaluation Form is forwarded to the employee's immediate supervisor for completion. The employee also must complete a Candidate Supplemental Application booklet and PS Form 991 (Application for Promotion or Assignment). The completed documents are submitted to the review panel. *See id.*

The review panel consists of one senior maintenance official, one maintenance supervisor who is familiar with the requirements of the position sought by the employee, and one human resources official. The review panel interviews the employee about his knowledge, skills, and abilities (KSAs) for the requested position. The review panel rates the employee's KSAs according to established guidelines and completes an evaluation form for each candidate. Ultimately, the USPS sends the completed forms to the National Test Administration Center, which generates a score and rates the employee as eligible or ineligible for the promotion. *See id.*

If the USPS determines that the employee is ineligible, it provides a report to the employee and the Maintenance Coordinator which identifies which KSAs the employee has failed. If the employee later receives additional training, education or experience, that employee may request an update of his or her KSA rating. The Maintenance Coordinator must confirm that the requirements for a KSA update have been met and complete the MSS Update Setup Form, which is then forwarded to the National Test Administration Center, which generates a new score and rating for the employee. *See id.*

If the USPS determines that the employee is eligible, a new PER is posted at

the USPS facility where the employee works. The USPS lists employees on the PER at each facility in order of their eligibility scores. When a position becomes vacant at a USPS facility, it is filled first from the Preferred Assignment Register (PAR), which is a list of employees who currently hold the same position at the same USPS facility, but who have requested a change to a different shift. If no employees are listed on the PAR, the USPS fills the vacancy from employees on the PER. All promotions from the PER occur automatically. If employees on the PER decline promotion, the USPS gives full consideration to all transfer requests from employees at other USPS facilities. After the USPS has considered those requests, it may consider applicants from outside the USPS. *See id.*

At every stage in the promotion process, USPS officials employ standardized forms and procedures. The qualification standards, written examinations and forms for each position are the same at every USPS facility. The review panel at each USPS facility follows the same evaluation guidelines and consists of individuals with essentially the same type positions. All completed written evaluations and forms from every USPS facility are sent to the same location to be evaluated and scored. *See id.*

On July 1, 1994, plaintiff asked West and Bob Cornell for the USPS to provide him training to develop the skills required under KSA 8. *See* Stip. No. 15. Plaintiff took and passed various examinations which were required in order to advance at the USPS. *See* Stip. No. 16. Having passed examinations which qualified him for advancement, the USPS listed plaintiff on PERs for the positions of Group Leader—Custodial, Area Maintenance Technician, Area Maintenance Specialist, and Maintenance Mechanic at the GMF, where plaintiff worked. *See* Stip. No. 17. On August 16, 1994, the USPS listed plaintiff on the PER for the position of Maintenance Mechanic Level 7 ("MML 7") at the GMF. *See* Stip. No. 18. Notwithstanding plaintiff's qualification for advancement to these

positions, plaintiff had not advanced by January 1, 1995. Plaintiff remained a Level 3 Custodian. *See* Stip. No. 20.

On or about February 27, 1995, after plaintiff learned that maintenance mechanic positions were available at the BMC, plaintiff requested a transfer from the GMF (where he worked) to the BMC (where the positions were available). *See* Stip. No. 21. Plaintiff requested a transfer to the BMC for any available mechanic openings for which he was registered at the GMF. *See* Stip. No. 22; *see also* Stip No. 24 (plaintiff did not request transfer for custodian position). This was plaintiff's first request to transfer to the BMC. *See* Stip. No. 23. In April 1995, two employees at the BMC were on PER for the MML 7 position but both declined the promotion. *See* Stip. Nos. 25, 26.

Under defendant's collective bargaining agreement, installation heads must give full consideration to all transfer requests. *See* Joint Exh. H. Transfer applicants are evaluated on the basis of work, attendance and safety. Plaintiff's work, attendance and safety records were adequate. *See* Stip. No. 27. In general, if sufficient qualified transfer applicants are available, at least one out of every four vacancies will be filled with a transfer applicant. *See* Joint Exh. H.

On June 5, 1995, plaintiff sent a Form 13 Routing Slip to West, Lowe, Altman and Barbara Bernardy (employee in defendant's human relations department) with a carbon copy to his attorney John Mueller, III. The form stated that plaintiff understood that maintenance mechanic jobs were opening at the BMC and inquired why if that was true neither he nor his attorney received notification per their many requests. *See* Stip. No. 28. On June 10, 1995, Lowe responded to plaintiff's inquiry by advising that plaintiff was scheduled to interview for a maintenance mechanic position on June 14, 1995. *See* Stip. No. 29.

If a job opening came up at the BMC and no one on the PER wanted the posi-

tion, Lowe had to first consider in-craft employees at his facility, then employees making transfer requests, then applicants from outside the USPS. *See* Stip. No. 30. Defendants' own regulations and procedures specify that transfer requests from other USPS facilities must be given full consideration before an applicant is hired from outside the USPS. On June 13, 1995, one day before his scheduled interview with plaintiff, Lowe interviewed at least three of the four applicants from outside the USPS. *See* Stip. No. 31.

On June 14, 1995, Lowe interviewed plaintiff for the position of MML 7. *See* Stip. No. 33. Lowe asked plaintiff a series of 16 questions which he had personally developed to consistently test applicants on their knowledge and practical experience in various aspects of electrical work, power equipment, etc. *See* Stip No. 34; Lowe's Trial Testimony. In Lowe's opinion, his bulk mail facility was "just one of the most unique facilities that exists in the postal system" and ideal applicants have work experience at places such as TWA, UPS, J.C. Penney's, or similar facilities. *See* Stip. No. 34. Lowe did not have the discretion to refuse to hire an employee on the PER at his own facility, the BMC. *See* Stip. No. 35. Lowe did not ask his 16 questions to prospective maintenance mechanics from the PER at his own facility. *See* Stip. No. 36. Lowe retained his interview notes with plaintiff. *See* Stip. No. 37. At the time of the interview, Lowe was not aware of plaintiff's age but thought that plaintiff probably was about 40 or Lowe's own age (which was 46). *See* Stip. No. 38.

On June 23, 1995, Lowe sent plaintiff a letter which advised that the maintenance mechanic positions had been filled, stating that "this does not adversely reflect on your ability as a Maintenance Mechanic." *See* Stip. No. 39. Lowe selected Antonio Aquino, George Haigwood, Jr., Kevin Jarman and Kevan McGuire for the MML 7 positions at the BMC. *See* Stip. No. 40. All four applicants came from outside the USPS. *See* Stip. No. 41, 50. When Lowe hired them, Aquino and Haigwood were both over 40, Jarman was 30, and McGuire

was 38. *See* Stip. Nos. 47, 48. Lowe reviewed the employment applications, which showed each applicant's date of birth, and he completed worksheets for each of the four applicants. *See* Stip. Nos. 42–43. Lowe did not have to complete a worksheet for plaintiff because the USPS did not require worksheets for applicants inside the USPS. *See* Stip. No. 49.

Lowe testified that he did not select plaintiff for the position of MML 7 at the BMC because he thought plaintiff was not qualified for the position. *See* Lowe Depo. at 263; Lowe Trial Testimony. Lowe also testified that he did not consider plaintiff's age or prior EEOC complaint, or the age of the other applicants. *See* Lowe Depo. at 259–60; Lowe Trial Testimony. Lowe's testimony was highly credible. West also testified that it is not unreasonable to deny a transfer request based on qualifications, and that sometimes an unqualified individual can make a PER for a position. He explained that the PER is not the best measure of individual qualifications.

Plaintiff testified that Lowe told him that the machines at the BMC operated at high voltages and could be dangerous. Plaintiff also testified that Lowe told him that he would be qualified for a maintenance mechanic position at another facility.

On June 26, 1995, plaintiff requested that Lowe inform him whether any maintenance mechanic positions had been filled at the BMC in 1994. On June 27, 1995, Lowe responded by stating that no maintenance mechanic positions had been filled at the BMC since February 27, 1995, the date plaintiff requested to transfer to the BMC. *See* Stip. No. 44. On July 3, 1995, plaintiff again requested that Lowe inform him whether any maintenance mechanic positions had been filled at the BMC in 1994. On July 6, 1995, Lowe responded by stating that maintenance mechanic positions had been filled at the BMC in January 1994 and June 1994. *See* Stip. No. 45. On July 14, 1995, plaintiff learned that Lowe had selected four younger males on July 8, 1995. *See* Stip. No. 46.

Ronald Shatto, a BMC union steward who worked with Lowe for eight years, testified that he had never heard Lowe make any negative comments based on someone's age or prior EEOC activity. John Phillips, a maintenance mechanic at the BMC since 1984, and James Felemonski, a maintenance mechanic at the BMC from 1991 to 1992, also testified that Lowe had not made such comments to them.

Lowe was himself in the protected class; in 1995 he was 46 years old. *See* Stip. No. 51.

In March 1997, defendant promoted plaintiff to the position of MML 7 at the GMF. Plaintiff has performed his job duties effectively since that time. *See* Stip. No. 52.

### *Discussion*

### I. Plaintiff's Retaliation Claim

The jury found in favor of defendant on plaintiff's retaliation claim. Plaintiff argues that despite the verdict, the Court should enter judgment as a matter of law in his favor.

### A. *Standards For Motions For Judgment As A Matter Of Law*

 Judgment as a matter of law is appropriate under Rule 50(b) of the Federal Rules of Civil Procedure "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Riggs v. Scrivner, Inc.,* 927 F.2d 1146, 1149 (10th Cir.), *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of Topeka,* 814 F.2d 1412, 1418 (10th Cir.1987). In determining whether judgment as a matter of law is proper, the Court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988). Nevertheless, the Court must find more than a mere scintilla of evidence favoring the non-

movant; the Court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988).

### B. *Analysis*

 To establish a prima facie case of retaliation under Title VII, plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) he was disadvantaged by an action of his employer subsequent to or contemporaneously with such opposition; and (3) a causal connection exists between the protected activity and the adverse employment action. *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993); *Dunbar v. Board of Dirs. of Leavenworth Pub. Library,* 996 F.Supp. 1086, 1092 (D.Kan.1998). The requisite causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

Both parties focus on the third element of plaintiff's prima facie case, *i.e.* a casual connection between his protected activity and Lowe's decision not to select him for the MML 7 position. At this point in the case, after trial to a jury, the issue whether plaintiff has established a prima facie case drops out, and the Court needs to consider only whether the jury properly found that plaintiff did not carry his ultimate burden of persuasion at trial. *See Coleman v. B–G Maintenance Mgmt. of Colo., Inc.,* 108 F.3d 1199, 1205 (10th Cir. 1997) (citing *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1491 (10th Cir.1994)); *see also* Jury Inst. No. 15. The Court set forth plaintiff's burden in the instructions to the jury:

On the issue whether defendant did not select plaintiff for the position because he filed a prior EEOC claim, plaintiff does not need to prove that

defendant acted only for retaliatory reasons, but he must prove that retaliation was a motivating factor in defendant's decision, that is, that defendant acted, at least in part, because plaintiff filed the prior EEOC claim.

A "motivating" factor means that but for its unlawful motive, defendant would have selected plaintiff for the Maintenance Mechanic Level 7 position. In other words, you must find that at least one of the factors which motivated defendant's decision not to select plaintiff for the position was illegal. A motivating factor need not be the sole or exclusive reason for defendant's decision.

If plaintiff proves by a preponderance of the evidence that defendant's failure to select him for the position was retaliatory, then you must decide in favor of plaintiff on this claim. If plaintiff does not prove his claim by a preponderance of the evidence, then you must decide this claim in favor of defendant.

*Instructions To The Jury* (Doc. # 59) filed June 10, 1999, at Inst. No. 15.

■ The jury heard sufficient evidence to find in favor of defendant on this issue. Lowe testified that plaintiff's prior EEOC complaint was not a reason for his decision not to select plaintiff. Lowe testified that he did not select plaintiff because he thought plaintiff was not qualified for the position at his particular facility. Plaintiff had filed his EEOC complaint four and a half years before Lowe's decision. Lowe was not named as a discriminating official in the prior EEOC complaint. In fact, Lowe testified that he had not read the EEOC complaint prior to his deposition. West, who was in a similar position to Lowe, testified that he had discretion whether to hire individuals who wanted to transfer from another USPS facility and that it is not unreasonable to deny a transfer request based on individual qualifications. Finally, several witnesses testified that they never heard Lowe make negative comments about someone based on prior EEOC activity. Viewing the evidence in the light most favorable to defendant, a reasonable jury could conclude that plaintiff failed to show by a preponderance of the evidence that defendant's failure to select him for the MML 7 position was in retaliation for his prior EEOC complaint. The Court will not overturn the jury's determination which relied in large part on their determination of Lowe's credibility.

Plaintiff claims that defendant's offered reason for non-selection, his lack of qualifications, is contradicted by defendant's admission, as part of plaintiff's ADEA claim, that plaintiff was qualified for the MML 7 position. As part of his prima facie case for his ADEA claim, plaintiff needed only to establish that he was minimally qualified for the position, not that he was able to correctly answer Lowe's interview questions or that he met certain subjective criteria. *See Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1510 (10th Cir.1997) (prima facie burden met through credible evidence that plaintiff is qualified even if employer disputes evidence; burden may be met through plaintiff's own testimony or that of co-workers; *see also Burrus,* 683 F.2d at 342 (subjective qualifications best evaluated at third stage of *McDonnell Douglas* analysis, not at prima facie stage). Plaintiff concedes that Lowe only had to give him full consideration and that Lowe was not required to hire him. In his discretion, Lowe asked candidates for the MML 7 position a series of questions, which arguably required greater knowledge than the USPS uniform requirements. Lowe's decision to seek individuals with more than minimal qualifications does not mandate a jury finding in favor of plaintiff. A jury could reasonably conclude that Lowe thought that he would get better qualified employees by asking the 16 questions at issue.

Finally, plaintiff contends that Lowe did not give him "full consideration" under the MSS and collective bargaining agreement. Lowe interviewed plaintiff, asked him questions and noted plaintiff's answers. Lowe testified that he checked plaintiff's attendance, work habits and safety record. Moreover, Lowe testified that he thought

plaintiff was not qualified to work on the machines at the BMC. Lowe feared that plaintiff might injure himself or others. Based on the evidence presented, a reasonable jury could conclude that Lowe gave plaintiff full consideration for the position. Moreover, even if the jury found that Lowe did not give plaintiff full consideration, they could have concluded that plaintiff's qualifications, rather than his prior EEOC complaint, motivated Lowe not to select plaintiff.

For the above reasons, and viewing the evidence presented in the light most favorable to the defendant, the Court overrules defendant's renewed motion for judgment as a matter of law.

## II. Plaintiff's ADEA Claim

Having considered the evidence submitted during trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### A. *Findings Of Fact*

The Court incorporates the Factual Background, *supra*, as its findings of fact.

### B. *Conclusions Of Law*

■ The ADEA bans discrimination against employees based on age, but limits the protected class to workers who are 40 or more years of age. *See Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir.1996); 29 U.S.C. § 621 et seq. To prevail on an ADEA claim, plaintiff must establish that age was a determining factor in the employer's challenged decision. *See Greene,* 98 F.3d at 557 (citing *Lucas v. Dover,* 857 F.2d 1397, 1400 (10th Cir. 1988)). Plaintiff need not show that age was the sole reason for his non-selection, but he must show that age "made the difference" in the USPS decision. *Greene,* 98 F.3d at 557 (quoting *EEOC v. Sperry Corp.,* 852 F.2d 503, 507 (10th Cir.1988)). He may meet this burden by direct evidence that age was a determining factor in defendant's failure to select him or by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Here, plaintiff relies on the latter approach.

■ To establish a prima facie case under the ADEA, plaintiff must show that (1) he was within the protected class; (2) he applied for and was qualified for the MML 7 position; (3) he was rejected for the position; and (4) defendant selected individuals younger than plaintiff for the positions. *See Furr v. AT&T Techs., Inc.,* 824 F.2d 1537, 1542 (10th Cir.1987). Both parties agree that plaintiff has established a prima facie case. He was 48 years old at the time defendant did not select him for the position of MML 7. He was qualified for the position of MML 7 at the BMC because he was on the PER for the same type position at the GMF. The four applicants who were selected were younger than plaintiff. Plaintiff's establishment of a prima facie case creates a presumption of unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ After plaintiff has established a prima facie case, the burden shifts to defendant to produce evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason. *Greene,* 98 F.3d at 558. The Court finds that the USPS has offered a legitimate nondiscriminatory reason for its decision not to hire plaintiff for the MML 7 position at the BMC in 1995. In particular, Lowe, the deciding official, testified that he did not select plaintiff because he thought that plaintiff was not qualified, in part because of the special nature of the BMC.

■ After defendant meets its burden, the presumption of discrimination drops from the case and plaintiff must establish by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." *Id.* Plaintiff may show pretext by establishing

either that a discriminatory reason more likely motivated defendant or that the employer's explanations are unworthy of credence. *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994).

■■■ Plaintiff has offered no direct evidence, including statistical evidence or agist remarks, which suggests that defendant's decision was based on age. Instead plaintiff argues that the Court should infer age discrimination because defendant's proffered reason is unworthy of belief. Lowe testified that he did not select plaintiff for the position because he thought that plaintiff was not qualified. Lowe also testified that in his decision, he did not consider plaintiff's age or the age of the other applicants. As noted above, the Court finds that Lowe's testimony is highly credible. At most, plaintiff has shown that Lowe did not like the Maintenance Selection System because on occasion, candidates he did not feel were qualified would make the PER.[1] West also testified, however, that the PER is not the best measure of qualifications and that it is not unreasonable to deny a transfer request because of individual qualifications. Lowe's dissatisfaction with the Maintenance Selection System was based on qualifications, not age. Likewise, Lowe's decision not to select plaintiff was based on qualifications, not age.

The Court finds that Lowe gave plaintiff "full consideration" for the MML 7 position under the Maintenance Selection System. Lowe interviewed plaintiff, asked him questions and noted his answers. Lowe testified that he checked plaintiff's attendance, work habits and safety record. Even if Lowe gave plaintiff less than full consideration, the Court concludes that he did so because he feared that it would be dangerous for plaintiff to work at the BMC due to his lack of qualifications. Although plaintiff was minimally qualified for the

position of MML 7 because he was listed on the PER at the GMF, it was Lowe's perception of plaintiff's qualifications that is relevant. *See Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). Finally, the Court notes that Lowe himself was 46 years old at the time of his decision. Several witnesses testified that they never heard Lowe make a negative comment regarding someone, because of his or her age. In sum, plaintiff has not carried his ultimate burden of establishing intentional discrimination based on age.

For these reasons, the Court finds in favor of defendant on plaintiff's claim of age discrimination.

**IT IS THEREFORE ORDERED** that *Plaintiff William R. Luse's Renewed Motion For Judgment As A Matter Of Law Pursuant To Fed.R.Civ.P. 50(b)* (Doc. # 62) filed June 21, 1999, be and hereby is **OVERRULED.** The Clerk shall enter judgment in favor of defendant on plaintiff's retaliation claim

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment in favor of defendant on plaintiff's age discrimination claim. Plaintiff shall take nothing on this claim.

---

1. Plaintiff repeatedly claims that Lowe did not have authority to decide that plaintiff was not qualified for the position after the USPS had listed plaintiff on the PER for the position at another facility. Even if plaintiff is correct,

he has established only that Lowe failed to follow the established procedure and possibly the collective bargaining agreement, not that Lowe did so because of plaintiff's age.